Chandler & another *v*. Simmons.

SAMUEL CHANDLER & another *vs*. CHARLES N. SIMMONS.

The guardian of an adult may avoid any conveyance of property executed by his ward while a minor which might be avoided by the ward himself if capable of exercising the right.

Under the Gen. Sts. *c*. 109, § 10, the ratification by an adult, by a sealed instrument, of a conveyance of real estate made by him while a minor, is a contract which is void, if executed after a copy of a complaint under § 9, to place him under guardianship as a spendthrift, and of the order of notice thereon, has been filed in the registry of deeds, and a guardian appointed by the probate court, and while an appeal is pending in this court, which afterwards affirms the decree of appointment.

If money paid to a minor as the consideration for his conveyance of real estate has been wasted or spent by him during his minority, payment or tender of the amount is not necessary to enable him, or, if he is under guardianship, his guardian, to avoid the conveyance.

If two tenants in common join, under Gen. Sts. *c*. 134, § 9, in a real action, and the proof of title of either is defective, the action must fail as to both, unless the writ is amended by striking out the name of one before verdict; or, if a verdict has been rendered against both under erroneous instructions as to the title of one, the exceptions may be sustained and the verdict set aside as to him, in order that he may become nonsuit.

WRIT OF ENTRY in behalf of Samuel Chandler and John E. Chandler, as tenants in common, by their guardian, Weston Earle, to recover a tract of land in Dighton. Plea, *nul disseisin,* with an averment of title in the tenant.

At the trial in the superior court, before *Morton,* J., it was admitted by the tenant that the land was formerly the property of the demandants, but he introduced in evidence a deed of it from them to himself, for the consideration of one hundred dollars, dated February 7, 1862. It appeared that John E. was then a minor, born on October 13, 1841; but the deed bore a certificate dated March 21, 1863, under his signature and seal, acknowledged before a justice of the peace, that on that day he, being of full age, set his hand and seal to it anew. But it appeared also that on June 17, 1862, a complaint of the selectmen of Dighton, where Samuel and John E. resided, was filed with the register of probate, to put them both under guardianship as spendthrifts, and an order of notice issued thereon; and that a copy of the complaint, with the order of notice, was duly filed in the registry of deeds on September 20, 1862, and on March 20, 1863, after due proceedings in the probate court, a decree was entered, appointing Weston Earle to be their guardian, from which they appealed to this court, where it was affirmed at November term 1864 for Bristol, and he was duly constituted and ever since has continued to be their guardian. And it further appeared that the consideration paid to John E. for his deed had not been paid or tendered to the tenant.

In behalf of John E. it was contended that, although the tenant might hold title as against Samuel, yet as against John E. the deed on February 7, 1862, was void by reason of his minority, and his ratification of it on March 21, 1863, was of no effect by reason of the proceedings in relation to the guardianship. But the tenant contended that the ratification of the deed by John E. was not the making of a contract nor a sale or transfer of real estate, within the meaning of the Gen. Sts. *c.* 109, § 10; and further, that the payment or tender to the tenant, before the commencement of this action, of the consideration paid to John E., was necessary to enable him to recover; and also, that in

this joint action no recovery could be had for either Samuel or John E. separately.

The judge instructed the jury that under the pleadings and on the evidence John E. was not entitled to recover, provided that they should find that when he executed the deed and the ratification he was of sound mind; a verdict was thereupon returned against both demandants; and John E., by his guardian, alleged exceptions.

*E. Ames & J. H. Dean,* for the demandants.

*G. Marston & W. H. Fox,* for the tenant.

WELLS, J. These exceptions bring up the instructions under which the right of John E. Chandler to recover certain land was submitted to the jury. The defence was based upon a conveyance made by John E. Chandler while a minor, and ratified by him after he became of age. No question is made but that he is completely divested of his title, unless the pendency of proceedings against him as a spendthrift deprived him of the right to confirm his deed. These proceedings were commenced, and a copy filed in the registry of deeds, in accordance with Gen. Sts. *c.* 109, § 10, before he became of age. The alleged ratification was made after an appeal from the decree of the probate court appointing a guardian over him as a spendthrift. Upon the appeal a guardian was subsequently appointed by this court. The statute above referred to provides that "if a guardian is appointed upon such complaint, all contracts, except for necessaries, and all gifts, sales or transfers of real or personal estate, made by the spendthrift after such filing of the complaint and order and before the termination of the guardianship, shall be void."

Two questions are presented: First, whether the deed of a minor may be avoided, after he becomes of age, by a guardian appointed over him as a spendthrift; second, whether the ratification of a deed, voidable only on the ground of minority, is embraced in the disabilities created by the statute.

A deed obtained by undue influence, though voidable only by the party wronged, may be avoided by a guardian afterwards appointed. *Somes* v. *Skinner,* 16 Mass. 348. The rights of the ward are to be asserted in his own name; but, upon the

appointment of a guardian, all discretion as to their exercise is taken from the ward and thenceforward intrusted to the guardian. A spendthrift under guardianship cannot even make an acknowledgment that will take his debt out of the statute of limitations. But his guardian may bind the estate of the ward by such an acknowledgment. *Manson* v. *Felton*, 13 Pick. 206–211. This is not denied as a general proposition, but it is contended that the right of a minor to avoid or affirm his deed stands upon a different footing; that it is a personal privilege to be exercised only by the minor himself. The case of *Oliver* v. *Houdlet*, 13 Mass. 237–240, is cited as authority to the point that the guardian of a minor cannot avoid his deed on the ground of minority. If that be so, it must be for the reason that the election, whether to avoid or affirm, is reserved to the minor until he shall be of age; and that a previous determination of his right by the guardian would be inconsistent with such a privilege in the ward. It has indeed sometimes been held that the minor himself cannot avoid his deed until he is of age. *Bool* v. *Mix*, 17 Wend. 119. *Roof* v. *Stafford*, 7 Cow. 179. *Zouch* v. *Parsons*, 3 Burr. 1808. It is undoubtedly true that he cannot affirm it till then. But it is at least questionable whether he can be deprived of the right to reënter or recover his property by suit while his minority continues. See *Edgerton* v. *Wolf*, 6 Gray, 453; Bingham on Infancy, 60–63; 1 Washb. Real Prop. 306; Reeve Dom. Rel. 254. After he is of full age, if unable to exercise his privilege, by reason of mental or legal incapacity, it seems reasonable and consistent with the nature and purpose of this right, that it should be exercised for him and in his name by the guardian who may have charge of his interests. Otherwise he might be remediless for most serious impositions, as he can do no legally valid act himself. The right may be asserted by heirs; and we cannot doubt that it may be also by a guardian appointed over his property for any cause for which adult persons are placed under guardianship.

Upon the second point it is urged that the deed of a minor may be confirmed by a mere waiver of the right to avoid, or by implication from his acts or even from his neglect to exercise the

right, and therefore that the confirmation of a deed, by which the title and seisin have already passed to the grantees, is not a contract, nor a sale or transfer of real estate, within the meaning of the statute. To this it may be answered that even a ratification by waiver, or implied from acts or from omission to avoid, requires in the party, whose right is thus determined, a mental and legal capacity to exercise the right and to bind himself by such act or omission to act. But the question here does not turn upon the precise designation to be given to the confirmation of a deed in the modes suggested. It relates to positive agreements or acts of release or waiver, by which the party deprives himself and those representing him of all right thereafter to avoid the deed and reënter upon the estate. Such acts are certainly in the nature of contract, and require all the elements of a contract (except a new consideration), to give them effect.

It appears to us to be the purpose of the statute that the same disabilities which rest upon the ward by virtue of the guardianship when adjudicated, shall be imposed upon him from the time of filing and recording the complaint. Notice is thereby given to the world that all dealings with him, or attempts to acquire property or rights from him, will be liable to be defeated by any decree of guardianship which may follow such complaint. It is competent for a statute thus to make an adjudication of disability relate back to the time of the commencement of proceedings.

The history of the legislation upon this subject seems to indicate that such is the intent of the statute now in force. The statute of 1783, *c.* 38, provided for the appointment and duties of guardians of lunatics, spendthrifts, etc. Section 7, which applies to spendthrifts only, contains this clause : " And no sale or bargain of any real or personal estate, made by such person or persons, after the appointment of guardianship as aforesaid, shall be held valid in law." The statute of 1818, *c.* 60, relating to spendthrifts, provided for the deposit of a copy of the complaint and order of notice in the registry of deeds, and contained the following clause: "And in case a guardian shall be appointed by the judge of probate to the person complained

against, all and every gift, bargain, sale or transfer of any real or personal estate, made by such person or persons, after the filing of the copy of said complaint and order of the judge of probate with the register of deeds, shall be void and of no effect." In the case of *Smith* v. *Spooner*, 3 Pick. 229, it was argued by counsel that as this language, creating disabilities from the time of filing the complaint and order of notice, was substantially the same as that in the St. of 1783, *c.* 38, § 7, declaring the disabilities which should result from the guardianship, it was to be as extensively applied; so as to make invalid a note given after the recording of the complaint and before the decree. But the court, although recognizing that " the latter statute merely anticipates the period when the acts shall become void," held that being a disabling statute it must be construed strictly, and that a promissory note was " not within the words certainly, and we think not within the spirit," of the provision. This decision was in 1825. Thereupon the St. of 1826, *c.* 63, was passed, enlarging the operation of the St. of 1818, *c.* 60, by adding " all contracts for the payment of money or the sale of personal or real estate " to the acts previously made void by that statute. In the case of *Manson* v. *Felton*, 13 Pick. 206, the question was whether a spendthrift, while under guardianship, could make a valid acknowledgment of his debt to take it out of the statute of limitations. To sustain the position that the statutes did not deprive the spendthrift of that capacity, the plaintiff relied upon the correspondence between the terms of the St. of 1783, *c.* 38, § 7, and the St. of 1818, *c.* 60, and the strict construction of the latter statute adopted in *Smith* v. *Spooner*, 3 Pick. 229. But the court, adhering to the decision in *Smith* v. *Spooner*, and regarding the disability before decree as a "limited incapacity to make conveyances of property," " declared by the St. of 1818, *c.* 60," held that the disability, after the decree of guardianship, was complete, and rendered void any contract of the ward, and any act or admission affecting his property or pecuniary interests. This decision was in 1832; and it is noticeable that the St. of 1826, *c.* 63, seems to have escaped the attention of both court and counsel.

Upon the revision of the statutes in 1836, the provision was adopted as in the Gen. Sts. *c.* 109, § 10. See Rev. Sts. *c.* 79, § 13. Not only is the language made broader by use of the terms " all contracts excepting for necessaries," but, as if to manifest a purpose to make the disability before and after the decree identical, it is declared to be effective to defeat all such contracts and conveyances made " after such filing of the complaint in the registry of deeds, and before the termination of the guardianship."

Another ground relied on by the defendant is that the deed cannot be avoided without a return of the consideration. We do not understand that such a condition is ever attached to the right of a minor to avoid his deed. If it were so, the privilege would fail to protect him when most needed. It is to guard him against the improvidence which is incident to his immaturity, that this right is maintained. *Gibson* v. *Soper*, 6 Gray, 279–282. *Boody* v. *McKenney*, 23 Maine, 517. If the minor, when avoiding his contract, have in his hands any of its fruits specifically, the act of avoiding the contract by which he acquired such property will divest him of all right to retain the same; and the other party may reclaim it. He cannot avoid in part only, but must make the contract wholly void if at all; so that it will no longer protect him in the retention of the consideration. *Badger* v. *Phinney*, 15 Mass. 359. *Bigelow* v. *Kinney*, 3 Verm. 353. Or, if he retain and use or dispose of such property after becoming of age, it may be held as an affirmance of the contract by which he acquired it, and thus deprive him of the right to avoid. *Boyden* v. *Boyden*, 9 Met. 519. *Robbins* v. *Eaton*, 10 N. H. 561. But if the consideration has passed from his hands, either wasted or expended during his minority, he is not thereby to be deprived of his right or capacity to avoid his deed, any more than he is to avoid his executory contracts. And the adult who deals with him must seek the return of the consideration paid or delivered to the minor in the same modes and with the same chances of loss in the one case as in the other. *Dana* v. *Stearns*, 3 Cush. 372–376. It is not necessary in order to give effect to the disaffirmance of the deed or con-

tract of a minor, that the other party should be placed *in statu quo. Tucker* v. *Moreland,* 10 Pet. 65–74. *Shaw* v. *Boyd,* 5 S. & R. 309.

Upon the case as stated in the exceptions we are of opinion that the attempt of John E. Chandler to ratify his deed was ineffectual, and that it may be avoided now by his guardian without the previous return, or the offer to return, the consideration paid therefor. The ruling of the superior court appears to have been otherwise, and therefore these exceptions must be sustained. But as the two wards are joint demandants in the suit, as tenants in common, and as the verdict is properly rendered against the other demandant, the tenant is entitled to judgment against both. This seems to have been the early construction of the St. of 1785, *c.* 62, § 3, which authorized co-heirs and joint-tenants, at their election, either to sever or to join in real actions. *Poor* v. *Robinson,* 10 Mass. 131. *Oxnard* v. *Proprietors of the Kennebeck Purchase,* 10 Mass. 179. The change by the St. of 1828, *c.* 137, § 3, extending this right to all tenants in common, (Gen. Sts. *c.* 134, § 9,) does not seem to warrant a different rule of practice in this respect. If the right of either joint demandant to recover proves defective, the action must fail, unless the writ be amended by striking out such party before verdict.

The judgment ought not however to conclude the right of John E. Chandler. He may therefore have the verdict set aside as to him, in order that he may become nonsuit. The tenant will then have his judgment against both demandants, and John E. Chandler will be at liberty to prosecute his right by a separate suit.                                  *Exceptions sustained*